**Bill HUBBARD, individually and doing business as Bill Hubbard & Associates, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 95–396C.

United States Court of Federal Claims.

Jan. 28, 2008.

Steve McNichols, Jr., Pleasanton, California, for Plaintiff.

Kenneth M. Dintzer, Assistant Director, with whom were Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, and Peter D. Keisler, Assistant At-

torney General, United States Department of Justice, Washington, D.C., for Defendant.

### *OPINION AND ORDER*

SMITH, Senior Judge.

This case is before the Court on remand for the purpose of reconsidering the amount awarded in attorney's fees.

### I. HISTORY

In its Final Order and Opinion, this Court held that "[b]ecause of the clear bad faith shown by the Navy in dealing with Mr. Hubbard, Mr. Hubbard has been forced to appeal to this court, after numerous attempts to resolve the case without resort to litigation, because it was impossible to deal reasonably with a business partner that had acted in bad faith. Accordingly, plaintiff is entitled to recover all its attorney costs, fees and expenses related to this litigation, including expert expenses...." *Hubbard v. United States*, 52 Fed.Cl. 192, 200 (2002).

In accordance with this Court's decision, Plaintiff filed a motion for the recovery of attorney's fees, costs, and expenses from Defendant under the Equal Access to Justice Act (EAJA). *See* 28 U.S.C. § 2412 (2006). Judgment was entered for fees and costs totaling $125,186.92. *Order*, July 14, 2005 (*Fees Op. 2*).

Defendant appealed the matter and, thereafter, the case was affirmed-in-part, vacated-in-part and remanded for the purposes of re-calculating the attorney's fees. *See Hubbard v. United States*, 480 F.3d 1327 (Fed.Cir. 2007). In its determination that this Court re-calculate its award, the Federal Circuit turned to case law regarding a similar fee shifting provision in the Civil Rights Act, 42 U.S.C. § 1988. *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Under the Act, the standard is a two part test. First, reasonable attorney's fees are determined based upon "the number of

hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. 1933. Second, the Court must review many factors in its determination of whether to increase or decrease the fee, "the most critical factor [being] the degree of success obtained." *Id.* at 436, 103 S.Ct. 1933; *see also Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

In *Hubbard*, the Federal Circuit held that the principles articulated in *Hensley* applied to the EAJA awards. 480 F.3d at 1333. Accordingly, this Court will turn its attention to *Hensley* and apply the EAJA in light of the principles announced in *Hensley*.

### II. DISCUSSION

#### 1. Reasonable Hourly Rate

■ Under *Hensley*, the Court must first calculate the reasonable hourly rate. Previously, this Court held that the reasonable hourly rate was 153.18.[1] *Fees Op. 2*. The Court then multiplied this rate by the number of hours agreed to by the parties as the number of hours expended on the litigation. The amount resulted in a total award of attorney's fees of $110,920.59. *Id.* The Government argued that this amount resulted in an interest award, an award that is precluded. *Id.* In essence, the Federal Circuit agreed stating that "[a]lthough the award of attorney's fees lies within the discretion of the trial court, that discretion does not authorize the court to award prejudgment interest against the United States." *Hubbard*, 480 F.3d at 1334 (quoting *Order*, pg. 2, Aug. 26, 2003) (*Fees Op. 1*). The Federal Circuit further stated that "[a]lthough it may difficult, or even impossible, to determine the particular year in which particular portions of the fees were earned ... [t]he court may be able to no more than make a rough approximation of when various portions of the

---

1. In arriving at the adjusted hourly wage, the Court divided 197.3, the CPI for all urban consumers in the region in April 2003, by 96.6, the CPI for all urban consumers for the same region in October 1981. The sum, 2.04, was multiplied by the $75 statutorily provided. This produced an adjusted wage of $153.18 per hour. *Fees Op.*

2 at 2. April 2003 was chosen because that date was the date in which Plaintiff's counsel filed the last brief in this matter. This followed the methodology in *Nat'l Ass'n of Manufacturers v. United States Dep't of Labor*, 962 F.Supp. 191 (D.D.C. 1997). *Fees Op. 1* at 5.

fees were earned...." *Hubbard*, 480 F.3d at 1334.

In light of this, the Court turns its attention to the Bill of Costs filed in February 2003 by Plaintiff's attorney. The Bill of Costs details the attorney's fees beginning in 1995 through October 2002. In reviewing the costs, it is clear that the majority of fees were incurred in 1996, the year the case was tried. The fees for January 1996 through trial amounted to nearly $60,000, while the other years' fees were substantially less. Due to the fact that a substantial amount of fees were generated in 1996, the Court will use the Consumer Price Index (CPI) from June 1996, the month the trial was held.[2] The result is $120.75 [3] per hour for reasonable attorney's fees. As the parties have previously agreed that the total attorney hours billed were 624.75, the adjusted fee results in a reasonable fee award in the amount of $75,438.56.[4]

### 2. Degree of Success and Whether the Fee is Excessive

■ As the reasonable fee has now been calculated, the Court must now consider whether to increase or decrease that starting number based on several factors keeping in mind that the most important factor identified by the Supreme Court is "the degree of success obtained in litigation." *Hensley*, 461 U.S. at 424, 103 S.Ct. 1933. In *Hubbard*, the Federal Circuit held that "although the court properly considered the government's pre-litigation conduct in determining whether the government's position was substantially justified, such conduct did not make irrelevant Hubbard's lack of success in this case." 480 F.3d at 1334.

The Court must now focus on the second step in *Hensley* to determine whether the award of $75,438.56 is excessive due to the limited success of the Plaintiff and, if so, whether the award should be reduced. Defendant has advanced the argument at all levels, in its Motion for Reconsideration, at the Federal Circuit, and again in its Post–Appeal Brief, that because Mr. Hubbard achieved a very small degree of success in his suit, recovering less than one tenth of one percent of the amount he sought, a reasonable award should be based on that proportional basis to arrive at an award of reasonable attorney's fees in the amount of $80.11. This argument was flatly rejected by the Federal Circuit stating that "a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Hubbard*, 480 F.3d at 1333–34 (quoting *Hensley*, 461 U.S. at 435 n. 11, 103 S.Ct. 1933 (internal citation omitted)). This Court shall also, once again, reject this argument.

Although *Hensley's* holding is clear that the "extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988[,]" *Hensley*, 461 U.S. at 440, 103 S.Ct. 1933, *Hensley* provides the mechanism for calculating the proper of amount of fees where the plaintiff is unsuccessful. Specifically, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee...." *Id.* Additionally, when a case involves a "common core of facts" giving rise to multiple legal theories of relief, the trial court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435, 103 S.Ct. 1933.

Here, Plaintiff proved the central allegations of his complaint and proved that the government acted in bad faith, in violation of his rights. A significant portion of counsel's

---

2. In its Motion for Reconsideration, Defendant argued that the attorney's fees awarded by this Court amounted to an improper award of interest by using the CPI index for the year 2003. Instead, Defendant argued that the fee award should be based on the year 1996, the year in which Defendant asserts that most fees were incurred. *Fees Op.* 2.

3. In arriving at the adjusted hourly wage, the Court divided 155.2, the CPI for all urban consumers in the region in June 1996, by 96.6, the CPI for all urban consumers for the same region in October 1981. The sum, 1.61, was multiplied by the $75 statutorily provided was to achieve an adjusted wage of $120.75 per hour.

4. The number is arrived by multiplying $120.75 by 624.75.

time was spent developing and proving the bad faith conduct. Plaintiff's success was limited only in terms of damages. In all other respects, Plaintiff prevailed. Therefore, under *Hensley*, this Court should award fees and costs expended in proving those allegations.[5] And conversely, the fees must be reduced by the amount of fees claimed for preparing its damages theory, the unsuccessful theory.

Once again, the Court turns to Plaintiff's Bill of Costs. After review, the Court has determined that approximately 55 hours can be attributed to Plaintiff's damages theory.[6] Following *Hensley*, the Court must, therefore, deduct these 55 hours from the 624.75 hours (total number of hours expended on the litigation and previously agreed to by the parties). By subtracting these 55 hours, the total number of reasonable attorney's hours becomes 569.75. Having found already that the reasonable fee per hour is $120.75, the Court shall now multiply the reasonable fee per hour by the 569.75 hours to arrive at an award of reasonable attorney's fees in the amount of $68,797.31.

Using the same logic as the calculations for attorney's fees, the paralegal hours shall also be reduced proportionally. The number of hours of attorney's fees deducted for fees related to the damages theory was .088%. Using that same percentage, 14.85 hours can be attributed to the paralegal hours billed with regard to the damages theory. These hours must, therefore, be deducted from the total paralegal hours billed of 168.75. Thus, the reasonable paralegal hours are 153.9. Previously, the Court awarded the actual dollar value of time billed for paralegal time. *Fees Op. 2* at 2. The Court shall reduce the previous allowed rate of $90 to the $75 statutorily provided for rate and the total amount

to be awarded for reasonable paralegal fees is $11,542.50.[7]

The inquiry does not end here however. In order to determine whether the fees are excessive, the Court turns to the policy of the EAJA. The EAJA was enacted "to ensure that individuals with limited resources and small businesses would not be 'deterred from seeking review of, or defending against, unreasonable government action because of the expense involved in securing vindication of their rights.'" *Design & Prod., Inc. v. United States,* 20 Cl.Ct. 207, 210 (1990) (internal quotations omitted). Congress enacted the statute to encourage individuals and small businesses to sue the Government on meritorious claims, particularly to vindicate rights violated by unreasonable and egregious conduct. The case before the Court was not one that was a run-of-the-mill contract case. Instead, there was intentional bad conduct by a Government agent. Further, there were a series of acts and outrageous conduct by the Government agent. Hubbard proved to this Court that the Government's actions were wholly unjustified. The attorney in this matter worked diligently for his client to bring this case, in good faith. In fact, this Court previously found that "[b]ecause of the clear bad faith shown by the Navy in dealing with Mr. Hubbard, Mr. Hubbard has been forced to appeal to this court, after numerous attempts to resolve the case without resort to litigation, because it was impossible to deal reasonably with a business partner that had acted in bad faith." *Hubbard,* 52 Fed.Cl. at 200. The attorney spent numerous hours on this matter and was forced to go to trial on a matter that involved bad faith on the part of the Government.

It is the purpose of the EAJA to encourage people to bring in good faith claims

---

**5.** Defendant argued during the post-appeal oral argument that all trial fees should be disregarded because Plaintiff admitted it incurred substantial fees on the bad faith issue and that very little time was spent on the concrete slab issue, an issue which could have been resolved on summary judgment rather than trial. Post–Appeal Tr. 2–4, Aug. 2, 2007. The Court disagrees with this argument. The damage issue was not clear before the Court's decision. Therefore, it was only after trial, that the Court was able to quanti-

fy the limited amount of damages recovered. However, that does not preclude the Court from awarding reasonable fees.

**6.** 1996 approximate hours billed for Mr. John O'Keefe, Plaintiff's damages expert witness. *See Bill of Costs,* Feb. 28, 2003.

**7.** This amount is arrived at by multiplying the number of hours (153.9) by $75.

against the government where the government acts in a manner that is contrary to the high and noble standard to be expected from a great Nation. As it is the policy of the EAJA that attorney's fees are not limited to the dollars awarded, the Court hereby finds that the amount of $68,797.31 in reasonable attorney's fees need not be reduced further and that the amount is not excessive under the factors in *Hensley* or there mandated by the Federal Circuit in *Hubbard*.

### 3. Other fees

As the Court has reduced the reasonable attorney's hours by the number of hours related to Mr. O'Keefe, the Court shall also reduce the costs award with respect to the costs attributed to Mr. O'Keefe. Previously, the Court awarded costs in the amount of $14,266.33. *See Fees Op. 2*. Of that amount, $4,344.83 were for costs associated with Mr.

O'Keefe. Therefore, the Court will reduce the previous costs awarded by $4,344.83 and shall award costs in the amount of $9,921.50.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's counsel shall be awarded attorney's fees in the amount of $80,339.81. The Court further awards costs in the amount of $9,921.50. The Clerk is directed to enter Judgment accordingly.

**IT IS SO ORDERED.**